IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>   *Plaintiff,* <br><br> v. <br><br> COURTNEY WASHINGTON, <br><br>   *Defendant.* | Criminal No. 2:23-cr-125-1 <br><br> Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Defendant Courtney Washington ("Washington") is now proceeding *pro se* with the assistance of standby counsel. The Court permitted him to file *pro se* pretrial motions, despite trial being set for January 12, 2026 (ECF Nos. 87-90), and Washington has done so. Currently pending before the Court are Washington's Motion to Preserve Law Enforcement Rough Notes (ECF No. 91), Motion to Suppress Identification and Evidence (ECF No. 94), and Motion for Franks Hearing (ECF No. 93). For the following reasons, the Court will grant in part Washington's Pro Se Motion to Preserve Law Enforcement Rough Notes (ECF No. 91) and deny both the Motion to Suppress Identification and Evidence (ECF No. 94) and the Motion for Franks Hearing (ECF No. 93).

### I.    PROCEDURAL AND FACTUAL BACKGROUND

On July 3, 2019, two different guns were fired outside of the Roo Bar in McKeesport, Pennsylvania, resulting in the recovery of approximately twenty-five shell casings at or around the bar. *See Commonwealth v. Washington*, 277 A.3d 1165 (Table), *1 (Pa. Super. 2022). The Pennsylvania Superior Court noted:

1

> "During the maelstrom, one of the apparent shooters was struck by a bullet; however, this individual never disclosed to police officers who had shot him. . . . The bar owner provided the police with a surveillance video, which depicted multiple people getting into and out of vehicles as well as shots being fired."

*Id.* Ultimately, Washington was identified as one of the shooters. *Id.*[1] He was charged in the Court of Common Pleas of Allegheny County, Pennsylvania at CP-02-CR-0008517-2019 with firearms not to be carried without a license, in violation of 18 Pa.C.S.A. § 6106(a)(1), and simple assault, in violation of 18 Pa.C.S.A. § 2701(a)(1).[2] Following a March 11, 2020, non-jury trial before the Honorable Bruce R. Beemer, Washington was found guilty of carrying a firearm without a license in violation of 18 Pa.C.S.A. § 6106(a)(1). He was sentenced to 2 to 4 years of incarceration. *See https://ujsportal.pacourts.us/CaseSearch.*

On appeal to the Pennsylvania Superior Court at No. 875 WDA 2020, Washington challenged the trial court's quashal of his suppression motion. Apparently, the trial court never held a hearing on Washington's suppression motion nor allowed him to construct a record for the Court to make the necessary findings of fact or conclusions of law as to whether the challenged evidence was obtained in violation of Washington's rights. Thus, the Pennsylvania Superior Court was compelled to vacate Washington's judgment of sentence and remand his case for the trial court to conduct a suppression hearing. *Washington*, 277 A.3d 1165, at *1. According to Washington, on remand, he negotiated a guilty plea to simple assault. On December 15, 2022,

---

[1] The Court reviewed the surveillance video submitted by the Government as Exhibit One in response to Washington's counseled motion to dismiss. (ECF No. 51). It remains mindful that Washington is presumed innocent until proven guilty, but it is confronted with the fact that Washington pled guilty to a state criminal charge arising from his involvement in the July 3, 2019, shooting incident and that many of the officers involved in the investigation testified in the state court proceedings.

[2] Originally, Washington was charged at the magisterial district judge level with nine offenses – attempted homicide, aggravated assault, three counts of criminal mischief, person not to possess a firearm, firearms not to be carried without a license, and recklessly endangering another person. *See https://ujsportal.pacourts.us/CaseSearch.*

Washington was sentenced to 6 months of non-reporting probation. *See* *https://ujsportal.pacourts.us/CaseSearch.*

By indictment filed on June 13, 2023, Washington was charged in this federal case with being a felon in possession of ammunition on July 3, 2019, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). On January 3, 2025, the Court denied Washington's counseled pretrial motion. (ECF Nos. 47, 52, and 53). A Pretrial Order was issued that day setting Washington's jury trial for February 24, 2025. (ECF No. 54). Washington's attorney, Ryan James, with the consent of the Government, sought an extension to prepare for trial. (ECF No. 57). After a hearing on January 23, 2025, the Court granted a continuance of trial until June 9, 2025, and a new pretrial order was issued. (ECF Nos. 61 and 62).

One month before Washington's trial was set to commence, Mr. James filed a motion to withdraw. (ECF No. 65). Mr. James was appointed under the Criminal Justice Act, 18 U.S.C. § 3006A (ECF No. 37), and he was Washington's second court appointed attorney.[3] After a hearing on May 14, 2025, the Court permitted Mr. James to withdraw as counsel. Washington elected to proceed *pro se* with Mr. James as standby counsel. The Court found that Washington knowingly and voluntarily waived his right to an attorney. Washington's oral motion to continue trial was granted. The trial was continued from June 9, 2025, until July 21, 2025. (ECF Nos. 69-71).

Thereafter, on May 21, 2025, Mr. James filed a motion to withdraw as standby counsel due to an incident that occurred with Washington. (ECF No. 74). The Court permitted Mr. James to withdraw as standby counsel on June 9, 2025. (ECF No. 75). It appointed Daniel J. Cuddy to represent Washington as standby counsel. (ECF No. 76). The Court granted another

---

[3] The Court permitted prior counsel to withdraw on May 1, 2024. (ECF Nos. 35 and 36).

3

continuance of trial until October 20, 2025, and a Fourth Pretrial Order was issued. (ECF Nos. 77-78). On July 24, 2025, Mr. Cuddy informed the Court that Washington intended to maintain his *pro se* status and represent himself at trial. (ECF No. 79). On August 19, 2025, the Court held a hearing at which time Washington reaffirmed that he wished to represent himself and that he was aware of the filing deadlines set forth in the Fourth Pretrial Order. (ECF No. 83).

Issues apparently arose between the parties during the preparation of trial documents. (ECF Nos. 83 and 84). A show cause hearing was set for September 10, 2025. (ECF No. 85). That day, Washington filed a motion to continue his trial. (ECF No. 89). At the September 10, 2025, hearing, the parties explained that Washington wanted a continuance to file pretrial motions. The Government lodged no objection. The Court granted Washington's motion for a continuance and rescheduled the trial for January 12, 2026. The issue of Washington's *pro se* status was held in abeyance. (ECF Nos. 87-88, and 90). The pretrial motions deadline was set (ECF No. 88), and a Fifth Pretrial Order was issued (ECF No. 90).

## II.   ANALYSIS

### A. Pro Se Motion to Preserve Law Enforcement Rough Notes (ECF No. 91)

Washington seeks an order directing the Government to retain and preserve all rough notes and writings of law enforcement officials, including local law enforcement officers, involved in this case (ECF No. 91). The Government has stated that it is fully cognizant of its obligation of preserve federal law enforcement agents' rough notes created during an investigation, and that it has already instructed federal law enforcement officials to preserve their notes. (ECF No. 96). It also has represented to the Court:

> The reality, however, is that local law enforcement did much of the original investigation of this matter and there was and is no requirement for them to retain their rough notes. It is the government's understanding that they did not retain

4

those notes. Specifically, the government is unaware of any text messages among local law enforcement officers about the identification of the defendant.

(*Id.* at 2). The Court finds that the Government has complied with its duty of candor, and it accepts the Government's representation of what transpired with local law enforcement records from an investigation that occurred in 2019. It will not order the Government to "show proof of the 'Petite Waiver' thats (sic) require for dual prosecution[,] [and that] AUSA Conway … followed procedure," or produce "the text message of the photo that made the identification in this prosecution from Defective Shawn Morris[.]" (ECF No. 91, p. 3).

The Court would further note that it has limited jurisdiction over local state investigative agencies. *See United States v. Ramos*, 27 F.3d 65, 71–72 (3d Cir. 1994) (municipal police officers are not federal agents for purposes of rule requiring preservation of rough notes of interview); FED. R. CRIM. P. 1 ("attorney for the government" refers to Attorney General, U.S. Attorney, and their assistants, and attorneys authorized to act on behalf of territories); 18 U.S.C. § 6 (for purposes of Title 18, "agency" refers to department, independent establishment, etc., of the United States). Thus, it will grant Washington's motion as to the preservation of federal law enforcement officers' and agents' rough notes. The Government will be ordered to preserve rough notes of federal law enforcement officers and agents consistent with its obligations under *United States v. Vella*, 562 F.2d 275, 276 (1977) (i.e., "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant [. . .]") and *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983) (i.e., "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced.").

B. **Motion for Franks Hearing (ECF No. 93)**

Washington has requested a *Franks*[4] hearing (ECF No. 93), which the Government opposes (ECF No. 96). To obtain a hearing, *Franks* requires a defendant to make a substantial preliminary showing that the affidavit establishing probable cause contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 171. In order to make this showing, a defendant cannot rest on conclusory allegations or a "mere desire to cross-examine." *Id.* at 171. Rather, a defendant must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as affidavits or sworn or otherwise reliable statements of witnesses, or provide a satisfactory explanation of their absence. *Id.*; *see also United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir. 2006)). To reiterate, "[t]o make the initial showing, a defendant must allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

As an initial matter, the information before the Court is that the affidavit only led to Washington's arrest. It was not in support of a search warrant, and no evidence was recovered during Washington's arrest. (ECF No. 96-2, pp. 18-19; ECF No. 96-4, pp. 37-38). A defective warrant does not invalidate the arrest itself, but instead may lead to the suppression of evidence that was gathered as a result of the arrest, such as post-arrest statements or tangible evidence

---

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

6

obtained in a search incident to the arrest. Here, there is no evidence to be suppressed, and courts do not release people just "because the officers failed to secure a warrant." *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975). Quite obviously, since no evidence was seized pursuant to the warrant, the Court need not undertake a *Franks* analysis.

Nevertheless, the Court holds that Washington has not met the requisite substantial preliminary showing for a *Franks* hearing. Washington makes a general assertion of false statements – i.e., "the lies of the McKeesport Police Department in the Affidavit of Probable Cause[.] Detective Shawn Morris stated that he sent a text message of a Black male actor shooting in the direction of the victim which Sergeant Shaw of the Duquesne Police made the positive identification." (ECF No. 93). However, he has failed to make an offer of proof showing that the detective misstated or omitted information from the affidavit knowingly and intentionally or with reckless disregard for the truth.[5]

In the July 4, 2019, affidavit of probable cause seeking an arrest warrant for Washington, McKeesport Police Department Detective Shawn Morris ("Det. Morris") wrote,

> After review[ing] on scene video of the incident, your affiant was able to obtain a clear still photograph of a black male actor holding a firearm shooting in the direction of the victim and above-mentioned properties. This photograph[ ] was viewed by members of law enforcement and the actor was positively identified by Lt. Shaw of the Duquesne Police Department as being Courtney Washington.

---

[5] Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an affiant withholds facts that any reasonable person would know that a judge would want to know. *Id.* at 788. When attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that the affiant acted with negligence or made an innocent mistake. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383.

(ECF No. 96-1, p. 2). The photograph was a screen shot taken from the entire video that captured the shooting outside the Roo Bar. (ECF No. 96-4, pp. 67-70, 73-74-75; ECF No. 52, p. 4, n.1).

During Washington's state court trial, City of Duquesne Police Department Lieutenant William Shaw ("Lt. Shaw") testified that he was shown a close-up photograph of Washington with his shirt unbuttoned and chest exposed sitting in the passenger seat of a vehicle. (ECF No. 96-2, pp. 4-5, 7, 13-14, 16; ECF No. 96-3). Although this photograph was not of Washington holding or shooting a firearm (ECF No. 96-3), Lt. Shaw nonetheless unequivocally identified Washington as the person in the photograph. (*Id.* at 12-13, 16-17). Det. Morris testified that he was unaware that the photograph distributed to law enforcement officers did not show the firearm. He explained that the video actually captured the actor holding a firearm on his lap. (ECF No. 96-4, pp. 35-37).

While the wording in the affidavit was not perfect, the idea conveyed was accurate in that a photograph was created from the surveillance video and Washington was identified as the person in the photograph. The Court holds that the crucial fact in the affidavit remains true – that Lt. Shaw identified Washington from a photograph created from the surveillance video that captured the actor involved in the shooting outside the Roo Bar. Thus, it finds that Washington has come forth with no evidence of false statements or omissions in the affidavit. What he has come forth with is nothing more than conclusory allegations and a desire to cross-examine local law enforcement officers. He has failed to make an offer of proof consisting of affidavits or sworn or otherwise reliable statements of witnesses to contradict the affidavit, nor has he explained the absence of these materials. *See Franks*, 438 U.S. at 171; *Desu*, 23 F.4th at 234;

*Yusuf*, 461 F.3d at 383, n. 8; *United States v. Rodriguez-Colon*, 827 F. App'x 188, 190 (3d Cir. 2020). He is not entitled to a *Franks* hearing. His motion will be denied.

### C. Motion to Suppress Identification and Evidence (ECF No. 94)

Washington also takes issue with Lt. Shaw's identification of him after being shown the photograph that was created from the video of the shooting outside the Roo Bar. Washington notes that he was not apprehended in the vicinity of the Roo Bar, and that no witness or victim identified him as being the shooter. (ECF No. 94, pp. 1-3). It is his contention that, "the police improperly disseminated a SMS photo attachment that was grainy and captured under [ ] lighting conditions to another police officer who had prior interactions with defendant in the past causing the officer to make an incorrect identification of [him] as the perpetrator of the incident." (*Id*. at 3). Further, according to Washington, the "dissemination of a single photograph to a 'potential identification witness' is both highly suggestive and unnecessar[y]…." (*Id*. at 4).

Pretrial identification procedures violate due process when they are "unnecessarily suggestive" and create a "substantial risk of misidentification." *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995). However, a "'suggestive and unnecessary identification procedure does not violate due process [and will not be suppressed] so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 106, 114 (1977)). The Supreme Court of the United States has emphasized that evidence of a pretrial photographic identification is inadmissible "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Although "identifications arising from single-photograph displays may be viewed in general with

suspicion," the Supreme Court has held that such procedure is not automatically unduly suggestive. *Manson*, 432 U.S. at 116. To determine reliability of identification, a court must examine the identification procedure in light of the totality of the circumstances, which may include: the witness' original opportunity to observe defendant, the witness' degree of attention during that observation, accuracy of the initial description, the witness' degree of certainty when viewing defendant or his image, and length of time between crime and identification procedure. *Emanuele*, 51 F.3d at 1128.

Det. Morris testified during Washington's state-court trial that he was one of the officers who investigated the July 3, 2019, shooting incident at the Roo Bar. (ECF No. 96-4). No one at the scene gave a description of the actor or identified Washington. (*Id.* at 25). The shooting victim refused to cooperate. (*Id.* at 29-31). Det. Morris obtained video surveillance from the bar. (*Id.* at 16). From the video, he was able to create a still-frame photograph of the actor. (*Id.* at 16-17; 67-70, 73-74-75; ECF No. 96-3). He then distributed it to his lieutenant and other officers in the hopes of identifying the actor. (ECF No. 96-4, 18, 33-34, 74). Det. Morris was informed that Lt. Shaw identified the actor. (*Id.* at 18).

The Court holds that the photograph was not suggestive because Lt. Shaw, an officer from another jurisdiction, knew Washington by sight. Det. Morris, who did not know Washington, certainly did not suggest to Lt. Shaw what Lt. Shaw already knew, and no one else suggested to Lt. Shaw that the photograph was of Washington.

Furthermore, the Court finds that Lt. Shaw's identification of Washington was reliable. During Washington's state-court trial, Lt. Shaw testified that as he was walking through the police station, he was shown a close-up picture of Washington on another officer's cellular telephone. All that the officer said was, "There was an incident in McKeesport. Could you ID

that?" Lt. Shaw unequivocally identified Washington as the person in the photograph. (ECF No. 96-2, pp. 3-4, 12-13, 16-17). Lt. Shaw further testified that he was born and raised in the City of Duquesne and coached high school football there for ten years. He worked for the police department for over twenty years and knew Washington and his family. Lt. Shaw came into contact with Washington on a regular basis in the community. (*Id.* at 12-13). Given that Lt. Shaw was well-acquainted with Washington, any possible suggestiveness is outweighed by the highly reliable nature of the identification.

For these reasons, Washington's motion will be denied. There is no basis to preclude Lt. Shaw's identification evidence at trial. Washington can certainly attack the reliability and accuracy of the identification through cross-examination. The Government has informed the Court that it intends to identify Washington as the individual captured on the video through other evidence,

> including a mug shot and a social media picture showing the distinctive tattoo across the defendant's chest visible in the surveillance video and the testimony of various law enforcement officials who have previously dealt with the defendant (See ECF 64). [Washington] also pleaded guilty to an offense in connection with this shooting and made various admissions related to evidence recovered from his cellular telephone and from notebooks found in his residence during a search warrant.

(ECF No. 96, pp. 6-7).

### III.  CONCLUSION

An Order of Court will follow granting in part the motion to preserve the rough notes of law enforcement, and denying both the suppression motion and the motion for a *Franks* hearing.

BY THE COURT:

/s/ William S. Stickman
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 11/3/25